UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOMRAJ SINGH,<br>   Plaintiff,<br>  v.<br>ASIANA AIRLINES,<br>   Defendant. | Case No. 14-cv-05556-JSC<br><br>**ORDER REVIEWING COMPLAINT UNDER SECTION 1915 AND ORDERING SERVICE BY THE MARSHAL** |

  Plaintiff Somraj Singh ("Plaintiff"), proceeding pro se and *in forma pauperis*, brings this action against Defendant Asiana Airlines ("Defendant"). The Court previously granted Plaintiff's application to proceed in forma pauperis and reserved to a later time evaluation of the complaint under 28 U.S.C. § 1915(e)(2). (Dkt. No. 4.) The case was assigned to a magistrate judge, but Plaintiff has not yet consented to the jurisdiction of the undersigned. The Court has now reviewed Plaintiff's complaint, which recounts the events of September through December of 2014, when Plaintiff and his family members traveled on several international flights operated by Defendant between San Francisco and New Delhi, India. (*See* Dkt. No. 1.) Plaintiff alleges that Defendant lost and damaged his and his family's checked baggage and improperly charged flight-change fees contrary to Defendant's policy and practice, and alleges that such conduct violates international and state law. Although there are some defects in the complaint as written, at least some causes of action state a claim for relief. Accordingly, the complaint passes Section 1915 review and must proceed to service by the Marshals.

## COMPLAINT ALLEGATIONS

  Plaintiff, a resident of California, brings this action against Defendant, a Korean airline company registered in to do business in the State of California. (Dkt. No. 1 ¶ 3-4.)

On September 3, 2014, Plaintiff and four family members (Anthony Johnson, Shirly Parmila Johnson, Priya Johnson, and Plaintiff's wife Reena Raji) traveled to India for a wedding. (*See id.* ¶¶ 6, 10.) From September 3 to 5, Plaintiff and his family traveled on flights operated by Defendant: Asiana Flight No. OZ 0211 from San Francisco International Airport ("SFO") to Incheon International Airport in South Korea, then Asiana Flight No. OZ 0767 from Incheon International Airport to Indira Gandhi International Airport ("Gandhi International") in Delhi, India. (*Id.* ¶ 6 & Ex. A.) On this flight and the later return flight, Plaintiff and Defendant entered into "contracts of carriage" by which Defendant was responsible for Plaintiff's baggage. (*Id.* ¶ 5.)

On behalf of himself and his family, Plaintiff deposited ten pieces of checked luggage on the flight, all in Plaintiff's name. (*Id.* ¶ 7.) Upon landing in Delhi on September 5, 2014, Plaintiff learned that Defendant had lost his luggage in transit. (*Id.* ¶ 8.) The lost luggage contained "costly attire for the bride and bridegroom, shoes, gifts for relatives, original degrees, diplomas, transcripts of Plaintiff and his wife, business and property deeds and other documents." (*Id.* ¶ 9.) The loss of the luggage caused Plaintiff financial loss but also emotional distress: Plaintiff "suffered humiliation, embarrassment, socially degraded treatment among relatives and society" and anger, anxiety and frustration. (*Id.* ¶¶ 8, 10.) As of the filing of the complaint, the luggage was still lost. (*See id.* ¶ 25.)

After waiting for a long time, at Defendant's instruction Plaintiff lodged a complaint about the lost luggage with Defendant at Gandhi International. (*Id.* ¶ 11 & Ex. B.) Defendant assured Plaintiff that the lost luggage would be delivered via courier to Plaintiff's listed address in India within three days and provided phone numbers for Plaintiff to call for further information. (*Id.* ¶ 12.) Over the next few days, Plaintiff called many times to inquire about the lost luggage, and Defendant repeatedly informed Plaintiff that Defendant was "doing [its] best and [would] soon send the lost baggage [to] the Indian address" that Plaintiff provided. (*Id.* ¶ 13.) On September 13, 2014, Defendant instead told Plaintiff to call their San Francisco office to find out about his lost luggage. (*Id.* ¶ 14.)

In the meantime, on or after September 14, 2014, Plaintiff called Defendant to request a change in return flight for Shirly Parmila Johnson. (*Id.* ¶ 15.) On that call, Defendant confirmed

2

the change in flight and noted that there was no charge incurred for the first flight change. (*Id.* ¶ 15.) Several days later, when Plaintiff called to find out the check-in time for Shirly Parmila Johnson's new flight, he learned that Defendant had mistakenly changed the flight of Priya Johnson instead, but Defendant changed Shirly Parmila Johnson's flight later (the complaint does not give exact timing for these events). (*Id.* ¶ 17.)

On September 19, 2014, Plaintiff called Defendant to change the return flight for the entire family, seeking a September 26, 2014 flight. (*Id.* ¶ 18.) On this call, Plaintiff learned that Defendant demanded a $100 flight change fee for changing Priya Johnson's flight because they had already processed an initial change of flight for her by mistake. (*See id.* ¶¶ 18-19.) On September 24, 2014, Plaintiff called to confirm his family's September 26 return flight, but learned that no confirmation had been made. (*Id.* ¶ 19.) Defendant instead confirmed a return flight from Gandhi International to SFO on Asiana Flight No. OZ 768 for the entire family on October 1, 2014. (*Id.* ¶ 20.)

The day of the return flight out of Gandhi International, Plaintiff visited Defendant's office there and learned that his baggage still had not arrived from San Francisco. (*Id.* ¶ 20.) When Plaintiff and his family returned to SFO later that day, Plaintiff inquired about his lost luggage, only to learn that there was no complaint in Defendant's computer system. (*Id.* ¶ 23.) In addition, upon landing at SFO Plaintiff saw that Defendant had damaged one of his bags: the luggage had a visible crack 18 inches long. (*Id.* ¶ 22 & Ex. D.) Although Defendant said that the crack was "normal wear and tear[,]" Plaintiff filed a damage complaint. (*Id.*)

Plaintiff then lodged a new complaint about the lost luggage. (*Id.* ¶ 24 & Ex. E.) Defendant promised to return the lost luggage to Plaintiff's U.S. address within one week; Defendant has neither located Plaintiff's luggage nor provided Plaintiff with any claim regarding the lost or damaged baggage. (*Id.*)

Plaintiff filed this action on December 19, 2014, asserting five causes of action against Defendant. First, Plaintiff alleges that Defendant is absolutely liable for damages stemming from his lost and damaged baggage under Article 17 of the Montreal Convention, a treaty of the United States. (Dkt. No. 1 ¶ 1.)  . (*Id.* ¶¶ 32-37.)

3

In the second cause of action, Plaintiff alleges that by losing and damaging his luggage, Defendant was grossly negligent "in performing its obligations as stated in Montreal Convention Article 33. (*Id.* ¶¶ 39.)

In the third cause of action, Plaintiff alleges that Defendant's conduct constitutes fraudulent business practices in violation of California Business and Professions Code § 17200. (*Id.* ¶¶ 41-47.) Specifically, Plaintiff identifies two fraudulent business practices: (1) charging a flight change fee for Priya Johnson despite having a policy that the first flight change is free; and (2) refusing to pay a claim to Plaintiff for his lost baggage even though policy is to treat baggage as "lost" if it is not found within 21 days. (*Id.* ¶¶ 44-45.)

In the fourth cause of action, Plaintiff alleges that Defendant has misrepresented material facts by knowingly misrepresenting the status of Plaintiff's baggage. (*Id.* ¶¶ 48-52.)

Finally, in the fifth cause of action, Plaintiff alleges that Defendant has breached the implied covenant of good faith and fair dealing by maliciously, willfully harming Plaintiff and failing to fairly resolve their mistakes. (*Id.* ¶¶ 53-58.) Plaintiff contends that the breaches indicate that Defendant "had no intention of performing the contract in good faith." (*Id.* ¶ 57.)

Plaintiff seeks at least $250,000 in compensatory damages, "severe" punitive damages, injunctive relief and attorneys' fees and costs. (*See id.* ¶¶ 47 & A-E.)

## LEGAL STANDARD

The Court must dismiss an *in forma pauperis* ("IFP") complaint before service of process if it is frivolous, fails to state a claim, or contains a complete defense to the action on its face. 28 U.S.C. § 1915(e)(2). The Court retains discretion over the terms of dismissal, including whether to grant leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

Regarding dismissals for failure to state a claim, Section 1915(e)(2) parallels the language of Federal Rules of Civil Procedure 12(b)(6). *Lopez*, 203 F.3d at 1127. In considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the Court must accept as true the allegations of the complaint in question, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and construe the pleading in the light most favorable to the plaintiff, *see Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). To avoid dismissal, a complaint must contain more than

"naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* Furthermore, a claim upon which a court can grant relief must have facial plausibility. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556.

In addition, because Plaintiff is proceeding in this action pro se, the Court must construe his complaint liberally. *See Garaux v. Pulley*, 739 F.2d 437, 439 (9th Cir. 1984) ("This circuit has long had a rule of liberal construction of pleadings presented by pro se litigants."). However, the court may not add to the factual allegations in the complaint. *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992) (liberal interpretation of a pro se complaint "may not supply essential elements of the claim that were not initially pled").

## DISCUSSION

The Court reviews each cause of action set forth in the complaint to determine whether the complaint states a claim upon which relief may be granted.

### A.   First Cause of Action:  Montreal Convention Article 17

In the first cause of action, Plaintiff alleges that Defendant is liable for damages for his lost and damaged baggage pursuant to Article 17 of the Montreal Convention, also known as the Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, S. Treaty Doc. No. 106-45 (2000), 1999 WL 33292734 (2000). (Dkt. No. 1 ¶ 32.) The Montreal Convention, June 23, 2000, S. Treaty Doc. No. 106–45, 2242 U.N.T.S. 309, is an international treaty governing airliner liability for the "international carriage of persons, baggage or cargo performed by aircraft." Art. 1. With respect to liability, the Montreal Convention establishes a unified system of rules regarding passenger claims for personal injury arising out of an accident, wrongful death, loss or damage to baggage, loss or damage to goods, and damages resulting from a transportation delay. Montreal Convention, *supra*, Arts. 17-19; *see also Edem v. Ethiopian Airlines Enter.*, No. 08 CV 2597 (RJD) (LB), 2009 WL 4639393, at *5 (E.D.N.Y. Sept.

1    30, 2009) ("The Convention's liability provisions, in turn, define [ ] three situations in which a
2    carrier is liable: (1) death or bodily injury of passengers; (2) damage to baggage; and (3) delay of
3    passengers, baggage and cargo." (internal quotation marks and citation omitted)).[1] The Montreal
4    Convention establishes the conditions for such claims, and sets limits on a claimant's recovery
5    when the conditions are met. Montreal Convention, *supra*, Arts. 21-22.

6    Article 17(2) of the Convention establishes liability for loss or damage to checked
7    baggage. Specifically, Article 17(2) provides that a "carrier is liable for damage sustained in the
8    case of destruction or loss of, or damage to, checked baggage upon condition only that the event
9    which caused the destruction, loss or damage took place . . . during any period within which the
10   checked baggage was in the charge of the carrier." Here, Plaintiff has alleged facts sufficient to
11   plausibly establish that Defendant is liable for the damage to or loss of his baggage.

12   However, as written this claim may not proceed for potential recovery that Plaintiff seeks.
13   Article 22 of the Montreal Convention limits the monetary liability of a carrier for lost baggage to
14   1,000 Special Drawing Rights, or approximately $1,500 except if the passenger has made a special
15   declaration of interest in delivery at destination at the time he checks his baggage or if "it is
16   proved that the damage resulted from an act or omission of the carrier, its servants or agents, done
17   with intent to cause damage or recklessly and with knowledge that damage would probably
18   result." Here, Plaintiff has alleged that the damage to his luggage resulted due to "Defendant and
19   its staff's gross negligence and reckless[ ] behavior," which meant that Defendant "failed to
20   observe the most fundamental procedures for handling Plaintiff's baggage." (Dkt. No. 1 ¶ 10; *see*
21   *also id.* ¶ 35.) However, beyond these conclusory allegations, Plaintiff has not pleaded any facts
22   to plausibly establish recklessness or knowledge of the probability of damage to his luggage.

---

[1] Article 17 establishes carrier liability for death or bodily injury to passengers and damage to checked and unchecked baggage—but distinguishes between "accident[s] . . . on board the aircraft" and "event [s] . . . on board the aircraft or during any period within which the checked baggage was in the charge of the carrier" that cause damage to baggage. Montreal Convention, *supra*, Art. 17(1)-(2). Article 18(1) imputes liability to carriers "in the event of the destruction or loss of or damage to, cargo" caused by an "event" during "carriage by air." *Id.* Art. 18. Article 19 describes the liability of a carrier for damages caused by delay of passengers, baggage, or cargo, and provides for carrier exoneration only where the carrier took all reasonable steps to avoid such damages. *Id.* Art. 19.

Absent such allegations, Plaintiff will not be able to recover the expanded liability of Article 22.

**B.      Second Cause of Action:  Gross Negligence**

In the second cause of action, Plaintiff alleges that Defendant's actions in losing and damaging his luggage constituted gross negligence of its obligations under the Montreal Convention.  (Dkt. No. 1 ¶ 39.)  A claim for gross negligence may proceed under the Montreal Convention, but is ineligible for the expanded recovery of Article 22(5); in other words, such a claim is limited to $1,500.  *See Hutchinson v. British Airways PLC*, No. 08-cv-2781(NGG), 2009 WL 959542, at *9 (E.D.N.Y. Apr. 6, 2009) ("[I]t may be that the injuries complained of in this case are the result of ordinary or gross negligence, and thus, are ineligible for Article 22(5)'s expanded recovery.").  The Court notes, however, that this second cause of action appears to be duplicative of the first:  both allege that Defendant is liable for its actions pertaining to the lost and damaged luggage.  Nevertheless, Plaintiff may proceed with both claims insofar as he seeks expanded liability in the first cause of action and only seeks the $1,500 ceiling for gross negligence in the second cause of action.

**C.      Third Cause of Action:  California's Unfair Competition Law**

Plaintiff's third cause of action brings a claim under California's Unfair Competition Law, Business and Professions Code Section 17200.  (Dkt. No. 1 ¶¶ 41-47.)  The basis of this claim is that Defendant's conduct illustrates two deceptive business practices:  first, demanding that Plaintiff pay a fee to change one relative's flight despite holding itself out as having a policy that the first request for a flight change is free (*id.* ¶ 44); and second, failing to treat Plaintiff's luggage as "lost" and pay out a claim for this lost luggage after several months despite having a policy or practice of treating baggage as lost when it is not found within 21 days (*id.* ¶ 45).  Plaintiff contends that he has "suffered unfair and unwarranted late fees and other improper fees and charges" as a result of this conduct.  (*Id.* ¶ 46.)

California Unfair Competition Law ("UCL") "prohibits any unfair competition, which means 'any unlawful, unfair or fraudulent business act or practice.'" *In re Pomona Valley Med. Grp.*, 476 F.3d 665, 674 (9th Cir. 2007) (citation omitted).  "The UCL's coverage is 'sweeping,' and its standard for wrongful business conduct is 'intentionally broad.'" *Pirozzi v. Apple, Inc.*,

1   966 F. Supp. 2d 909, 920 (N.D. Cal. 2013) (quoting *In re First Alliance Mortg. Co.*, 471 F.3d 977, 995 (9th Cir. 2006)). "Each prong—fraudulent, unfair, and unlawful—is independently actionable." *Pirozzi*, 966 F. Supp. 2d at 920 (citations omitted).

Here, Plaintiff does not make clear which UCL prong he alleges: at one point he asserts that the claim is brought under the "fraudulent business act or practice" prong, but elsewhere he implies that the unlawful and unfair prongs are also at issue. (Dkt. No. 1 ¶ 46 (describing damages owed as a result of Defendant's "unlawful, unfair and fraudulent acts and practices").)

To the extent that Plaintiff's claim is under the fraudulent prong of the UCL, it fails to state a claim. UCL fraud claims are subject to the heightened pleading requirements of Rule 9(b), under which "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This includes stating the "who what, when, where, and how" of the misconduct charged. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). In addition, UCL claims require that a plaintiff's economic injuries occur "as a result of" the fraudulent conduct, Cal. Bus. & Prof. Code § 17204, so the plaintiff must allege "a causal connection or reliance on the alleged misrepresentation." *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 855 (2008). This requires the plaintiff to plead that a misrepresentation "was an immediate cause of the injury-producing conduct[.]" *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009). Plaintiffs proceeding under the fraudulent prong of the UCL must allege that there was "a likelihood of confounding an appreciable number of reasonably prudent purchasers." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1026 (9th Cir. 2008).

Plaintiff has identified two statements, although he has not provided details about who made the statement. (*See* Dkt. No. 1 ¶¶ 44-45.) Nevertheless, as written the complaint fails to state a claim under the fraudulent prong of the UCL because, while it highlights Defendant's interactions with Plaintiff, there are no allegations suggesting that Defendants have engaged in similar behavior with respect to other customers. Thus, the complaint as written does not sufficiently allege a likelihood of confusing the general public. *See Clemens*, 534 F.3d at 1026. For each of these reasons, Plaintiff's fraud-prong UCL claim fails to state a claim upon which relief may be granted.

1  In contrast, an "unlawful" UCL claim is based on business practices in violation of other state or federal laws, *see CelTech Comm'cns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999), and "unfair" claims is "one that either offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *McDonald v. Coldwell Banker*, 543 F.3d 498, 506 (9th Cir. 2008) (internal quotation marks and citation omitted). What constitutes an unfair business practice "under any given set of circumstances is a question of fact[.]" *People v. McKale*, 25 Cal.3d 626, 636 (1979). Here, Plaintiff has alleged enough to state a claim for an unfair business practice, based on Defendant's practice of holding itself out as having one policy while failing to follow that policy to Plaintiff's detriment.

In short, Plaintiff's complaint fails to state a claim under the fraudulent prong of the UCL, but has sufficiently alleged a violation of the unfair claim to survive Section 1915 review.

**D.     Fourth Cause of Action: Misrepresentation**

The fourth cause of action is for misrepresentation of material facts, *i.e.*, fraud. (Dkt. No. 1 ¶¶ 48-52.) The basis of this claim is that "Defendants knew the facts about the status of lost and damaged baggage at their own end but still Defendant misrepresented the material facts and status reports to Plaintiff" by providing "vague, irrelevant, illegal" responses that "hid[ ] and misrepresented the material facts." (*Id.* ¶ 50.) Although Plaintiff does not indicate whether the claim is for negligent or fraudulent misrepresentation, these allegations imply it is the latter. (*See id.* (Defendants *knew* the facts but misrepresented them to Plaintiff).)

To state a claim for misrepresentation of material facts, also known as fraud, a Plaintiff must allege (1) misrepresentation; (2) knowledge of falsity (scienter); (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126. To recover for fraudulent misrepresentations, a party must meet the heightened pleading standard of Rule 9(b), including the "who what, when, where, and how" of the misconduct charged. *Vess*, 317 F.3d at 1106.

Here, Plaintiff's misrepresentation claim is not pleaded with the requisite particularity. Although the recitation of facts discusses conversations with "Defendant" about the status of the lost baggage and describes when those conversations occurred (*see, e.g.*, Dkt. No 1 ¶¶ 13, 14, 23,

25), he does not identify who made the alleged misrepresentation on Defendant's behalf, nor does he allege specific facts supporting his reliance on Defendant's misrepresentation. Plaintiff "must allege the specifics of . . . [his] reliance on the misrepresentation[s] to show a bona fide claim of actual reliance." *Cadlo v. Owens-Illinois, Inc.*, 125 Cal. App. 4th 513, 519 (2004). "Actual reliance occurs when the defendant's misrepresentation is an immediate cause of the plaintiff's conduct, altering [her] legal relations, and when, absent such representation, the plaintiff would not, in all reasonable probability, have entered into the transaction." *Id.*

Moreover, Plaintiff alleges that he is entitled to "damage[ ] in an amount to be determined at trial." (Dkt. No. 1 ¶ 52.) It is not clear what damages Plaintiff claims to have suffered as a result of Defendant's conduct relating to any misrepresentation about the status of his baggage. Accordingly, the claim must be dismissed on this basis, as well. *See, e.g.*, *Stiles v. Wells Fargo Bank*, No. C-14-04169 DMR, 2014 WL 7146950, at *6 (Dec. 15, 2014) (dismissing misrepresentation claim, in part, because the plaintiff had not alleged facts to support damage suffered as a result of the defendant's purported misrepresentation).

**E.     Fifth Cause of Action: Breach of the Implied Covenant of Good Faith & Fair Dealing**

Plaintiff's final cause of action alleges that Defendants breached the implied covenant of good faith and fair dealing by unfairly dealing with Plaintiff, filing to resolve mistakes with Plaintiff, and breaching the contract of carriage "which show[ed] they had no intention of performing the contract in good faith." (Dkt. No. 1 ¶¶ 55-57.)

An implied covenant claim cannot be based on the breach of the contract of carriage to deliver the luggage, as breach of the implied covenant cannot be based on a breach of contract. *See Daly v. United Healthcare Ins. Co.*, No. 10-CV-03032-LHK, 2010 WL 4510911, at *4 (N.D. Cal. Nov. 1, 2010) (citations omitted). Thus, Plaintiff's implied covenant claim based on a "bad faith breach of contract" does not survive. (*See* Dkt. No. 1 ¶ 57.)

The same is true to the extent that the Court construes Plaintiff's implied covenant claim as one for promissory fraud—*i.e.*, a promise made without intent to perform. *Lazar v. Super. Ct.*, 12 Cal. 4th 631, 638 (Cal. 1996). Other than this conclusory allegation that Defendant "had no intention of performing the contract in good faith," or other purely conclusory statements that

10

Defendant acted "with malice," the complaint is absent factual allegations that plausibly establish that Defendant had an intent to defraud Plaintiff. These conclusory allegations are not enough to state a claim for promissory fraud. *See, e.g.*, *Mohamed v. AMCO Ins. Co.*, No. 13-0958 SC, 2013 WL 1739477, at *6 (N.D. Cal. Apr. 22, 2013).

The claim may proceed, however, with respect to unfairly dealing with Plaintiff by failing to resolve mistakes after they were made. The complaint alleges that Plaintiff had a written contract with Defendant—the contract of carriage, which included the obligation to bring Plaintiff's luggage from SFO to Gandhi International. Therefore, Defendant had a duty to execute the contract's purposes in good faith. Although the exact terms of this contract are not at issue here, Plaintiff has alleged that having breached the agreement by failing to safely deliver Plaintiff's luggage, Defendant then had an obligation to deal fairly with Plaintiff when it came to resolving the problem Defendant created by speaking truthfully about the status of the baggage. (*See* Dkt. No. 1 ¶¶ 55-57.) This is enough to pass Section 1915 review on this cause of action.

## CONCLUSION

For the reasons explained above, the complaint states a claim upon which relief can be granted as to some causes of action, and therefore passes Section 1915 review. The Clerk of Court shall issue the summons. Further, the U.S. Marshal for the Northern District of California shall serve, without prepayment of fees, a copy of the complaint, any amendments or attachments, and this Order upon the defendant. The Court's decision to allow the complaint to proceed to service is without prejudice to Defendant moving to dismiss the claims on any grounds.

**IT IS SO ORDERED.**

Dated: March 4, 2015

_____
Jacqueline Scott Corley
United States Magistrate Judge